## Michael Wagner et al. v. E. Percy Maynard.

1. TRUSTS—*When They Arise.*—A trust will not result to one who pays a part only of the purchase money of land conveyed to another; unless it be some definite part of the whole consideration, it can only arise from the original transaction and at the time it takes place.

2. RESULTING TRUSTS—*When They Arise.*—A resulting trust can only arise in favor of a person who furnishes the consideration money, or some aliquot part thereof, as part of the original transaction, at the time of the purchase.

3. SEALED CONTRACTS.—*Not to be Altered by Parol Agreements.*—Parol agreements whether prior, contemporaneous, or subsequent, are, in the absence of fraud, impotent to alter or annul a sealed contract.

4. EQUITY PRACTICE—*Bill When Controlled by Exhibits.*—Allegations in a bill of what is contained in a writing which is attached to as an exhibit and made a part of the bill, will be controlled by the writing and not by what is alleged of it.

**Bill in Chancery,** to recover trust funds. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed April 27, 1896.

FARSON & GREENFIELD, attorneys for appellants.

OTIS & GRAVES, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION QF THE COURT.

This is an appeal from a decree sustaining a demurrer to the amended bill of the appellants, and, the appellants electing to stand by their amended bill, dismissing the original and amended bills for want of equity.

The appellants, Wagner and Baltes, contracted with one Anderson to build for him ten houses upon twenty lots of land, two of which lots were owned by the appellee, and commenced the construction thereof. Before any of the houses were completed the appellants discovered that Anderson was insolvent, and had no interest whatever in the lots. They thereupon interested one Denman in the matter, and after some negotiation Denman entered into separate written agreements with the owners of the twenty lots, whereby the legal title to the lots should be conveyed to Denman and the houses be completed by him.

The portions of the agreement so entered into between Denman and the appellee as to the two lots owned by the latter, were so far as is material to the questions here involved, substantially as follows:

In consideration of the deeding by appellee to Denman of the two lots, Denman agreed to complete the building theretofore begun and partially constructed thereon by Wagner and Baltes, and as soon as completed to endeavor to sell the lots and building for a sum not less than $2,850. When sold, thirty per cent of the purchase price should be paid to appellee provided that no more than $850 should be paid to him, that being the agreed price of the said two lots.

And concerning such purchase price, the agreement provided that Denman should be a "trustee of the purchase price of said property until said second party (appellee) receives the said sum of $850," and that he would "receive and hold in trust the said thirty per cent of the purchase

price of the said property for the use and benefit" of appel-
lee up to the said sum of $850.

It was also provided in the agreement, that at any time
prior to the sale of said premises, or the final payment of
the said $850 to the appellee out of the price received for
said premises, Denman should have the option of paying to
appellee the whole of the said $850, or any part thereof re-
maining unpaid, and have a quit-claim deed to the premises.

And by another clause of the agreement, it was expressly
agreed that when Denman should have paid appellee the
sum of $850 out of the purchase price of said property, or
from any other source, he should be entitled to the cancella-
tion and delivery of the contract, and to have a quit-claim
deed of the premises.

And again, by another clause, it was expressly agreed by
appellee that he would at any time, upon payment of $850
being made to him, cancel said agreement and deliver to
Denman a quit-claim deed of the property.

That agreement was dated September 19, 1891, and the
only parties to it were Denman and the appellee.  The ap-
pellants, Wagner and Baltes, were not mentioned in it, ex-
cept in identifying the building as being one partially con-
structed by them.

Subsequent to the said agreement between Denman and
appellee, the appellants, Wagner and Baltes, entered into a
written agreement with Denman, bearing date October 5,
1891, whereby Wagner and Baltes agreed to build and com-
plete the entire ten houses for Denman for the sum of
$20,000, for which Denman agreed to pay them by giving
them seventy per cent of the purchase price he should receive
when he succeeded in selling the houses and lots, or either
of them.

To this last contract appellee was not a party, and was in
no way mentioned in it.  Both contracts were under seal,
but neither one was recorded, but the bill alleged that Wag-
ner and Baltes had full knowledge of the one between Den-
man and appellee, and of all the facts and circumstances
which led to it; and that appellee had full knowledge of

the terms and conditions, and approved of the one between Denman and Wagner and Baltes, and of the relation of Denman to the property as between himself and Wagner and Baltes.

Besides alleging the foregoing facts, the bill alleged that it was understood and agreed at the time said contracts were made, and at various times thereafter, between Denman, and Wagner and Baltes, and the appellee, that Denman should make effort to procure a loan upon the property, in the event that a sale could not readily be made, and from the proceeds of said loan turn over to Wagner and Baltes seventy per cent thereof to apply on the price to be paid to them for constructing the houses.

It was also alleged that Wagner and Baltes completed all the houses, including the one standing on the two lots of appellee, and received no money or any other consideration on account thereof; that after the houses had been completed Denman sold the house and two lots mentioned in the said contract with appellee for the alleged consideration of $3,000, and with appellee's consent took notes aggregating $2,783 for part of the purchase money, secured by trust deed upon the property, and out of the proceeds in some way arising from said sale paid $500 to Wagner and Baltes; that on the same date of said sale Denman, with the knowledge and approval of appellee, procured loans aggregating $9,000 upon the other nine houses and the lots upon which they stood, and out of the proceeds thereof paid to appellee the said sum of $850.

It was further alleged that Denman is insolvent; that the trust deeds given to secure said $9,000 have been foreclosed, and that Wagner and Baltes are unable to redeem from the foreclosure sales that have been made of said property.

The prayer of the bill was that appellee be required to account for the said sum of $850, and that he be decreed to have received said sum in trust for said Wagner and Baltes, and be ordered to pay the same to them.

The chief contention of appellants is that the appellee

having knowledge of trust relations existing between Wagner and Baltes and Denman, with reference to the property itself, as well as to the proceeds to arise therefrom, whether from a sale or a loan; had no right to accept from Denman in payment of a debt due to him from Denman, funds which he knew had been raised by Denman from a loan upon property which Denman held in trust for Wagner and Baltes; but that having done so, knowing that the money was a trust fund, he must be held as trustee thereof for the appellants.

We have considered all the facts that were alleged, although some material ones may not be embraced within those stated by us, but are unable to discern that they make out a case of trust either implied, constructive or resulting, as between Wagner and Baltes and Denman. Reed v. Reed, 135 Ill. 482; Douglass v. Martin, 103, 25; Gibson v. Decius, 82 Ill. 304; Taylor v. Turner, 87 Ill. 296; Doyle v. Murphy, 22 Ill. 502; Bromwell v. Turner, 37 Ill. App. 561.

Examining the contract, with reference to the above authorities, we can not see that a trust was created.

Denman's contract was to hold the title, for which at that time neither himself nor anybody else had paid anything or agreed to pay anything. In the event that he should sell the houses or borrow money on them, he agreed to pay a certain percentage of what he received, but he does not seem to have bound himself otherwise to pay any sum whatever; and when he should have paid the equivalent of such percentage, no matter from what source he derived the funds, the property or the surplus proceeds would belong to him. His mere agreement to pay such percentage, when realized, created no lien upon the fund to be derived by him, although it well might render him liable at law for the amount.

Testing the transaction by Lord Hardwicke's definition that " a trust is where there is such a confidence between parties that no action at law will lie," (Sturt v. Mellish, 2 Atkyns 610,) it would seem that no trust existed

here in Denman, for it is plain that an action at law would lie against Denman for any breach of his contract of which he may have been guilty.

Assuming that the demurrer admitted all the allegations of the bill concerning appellee's knowledge of the arrangements between Denman and Wagner and Baltes, yet what those arrangements and agreements were must be found in their written contract and nowhere else.

That contract was under seal, and it is familiar doctrine that parol agreements, whether prior, contemporaneous or subsequent, are, in the absence of fraud, impotent to alter or annul a sealed contract. Pike v. Leiter, 26 Ill. App. 530; Same case, 127 Ill. 287; Leavitt v. Stern, 55 Ill. App. 416.

The contract itself was made a part of the bill, and was attached thereto as an exhibit. The rule is, that allegations in a bill of what is contained in a writing which is made a part of the bill, will be controlled by the writing; that the writing and not what is alleged of it, will control. Dreyer v. Goldy, 62 Ill. App. 347.

Appellee must, therefore, be held not to have dealt with Denman, knowing him to have been charged as trustee, but only as being charged with the undertakings or promises found in his written contract with Wagner and Baltes, and which are, as we have said, lacking in all essentials of a trust, and therefore as receiving only that which Denman had a right to bestow and himself a right to receive.

The appellee being subject to no trust relations between other parties, received nothing he was not entitled to. The agreed price for his lots was $850, which was all that he got. By the terms of the contract he entered into with Denman, the latter had the right to pay him that sum out of the proceeds arising from a sale of the particular property, or from funds derived in any other way, and when paid he was bound to accept it, and to convey his two lots. There was nothing unlawful or inequitable in such a contract, nor, as we think, in the manner of its performance.

. It is not claimed that Denman did not have full authority to make the contract with appellee, and it was under that

contract alone that any right to appellee's two lots and to build upon them was secured by Denman, or any one in whose interest he may have acted.

And there is nothing inconsistent between that contract and the one subsequently entered into by Denman with Wagner and Baltes. Both of those contracts might, so far as we discover, be treated as but one for the working out of a general arrangement, without affecting appellee's right to receive payment for his lots in the way he was paid, or his obligation to convey his property when paid.

Appellee's position was that of a vendor only, upon terms that have been performed both by himself and his vendee. He has not received anything, and by the terms of his contract and all his relations in the transaction, he never was to receive anything but his own. Under such circumstances, to charge him as trustee for others, of that which came to him as his due, would be to make a contract for him which he never contemplated, and which he can not be said to have assumed, under any rule of law with which we are familiar or to which we have been referred.

The decree of the Superior Court will therefore be affirmed, and it is so ordered.