ALLAN C. STORY

*v.*

BENJAMIN H. HULL *et al.*

*Filed at Ottawa October 31, 1892.*

1. ATTORNEY AT LAW—*lien for fees earned.* In this State, in the absence of an express contract out of which an equitable assignment arises, an attorney at law has no lien for his compensation upon the judgment or decree rendered in a suit prosecuted by him, or upon the real estate, moneys, fund or other property recovered by means of his legal services and skill.

2. EQUITABLE ASSIGNMENT—*what constitutes.* An equitable assignment is such an assignment as gives the assignee a title which, though not cognizable at law, a court of equity will recognize and protect. There must be an actual appropriation of the fund, or of some designated part, proportion or per cent of it, to operate as an equitable assignment.

3. An agreement of a party to pay his attorney and counsel a reasonable compensation for his legal services out of the proceeds of the litigation, is one depending upon the mere personal responsibility of the employer, and creates no equitable lien in favor of the attorney. Such a case differs from one where there is a fund in charge of a chancery court which is administering on such fund.

4. CHANCERY JURISDICTION—*remedy at law.* Where parties agree to pay their solicitor or attorney a reasonable compensation for his legal services, and promise to pay it out of the sum realized from the litigation, the question of what is a reasonable compensation is purely a question of fact, upon which the clients have a constitutional right to take the verdict of a jury, and the attorney's only remedy is in an action at law for a breach of the promise to pay.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

Mr. FRED. W. STORY, Mr. W. P. BLACK, and Mr. GEORGE F. WESTOVER, for the appellant:

The agreement that appellant should receive a child's part, operates as an equitable assignment. *Williams* v. *Ingersoll,*

89 N. Y. 508; *Thurber* v. *Chambers,* 66 id. 49; *Trist* v. *Child,* 21 Wall. 441; *Smith* v. *Young,* 62 Ill. 210; *Hawk* v. *Arnent,* 28 Ill. App. 392.

Such an assignment need not be in writing.    *Williams* v. *Ingersoll, supra; Hawk* v. *Arnent, supra; Ely* v. *Cook,* 83 N. Y. 365; *Fitch* v. *Gardner,* 41 id. 578; *Reilley* v. *Phœnix Bank,* 83 id. 318; *Draper* v. *Fletcher,* 26 Mich. 155; *Jones* v. *Whitney,* 13 Mass. 304.

As to the power of the court over a fund in its actual control, see *Freeman* v. *Shreve,* 5 Norris, 135; *Justice* v. *Justice,* 115 Ind. 203; *Ex parte Plitt,* 2 Wall. Jr. 478; *Sterritt's Appeal,* 108 Pa. St. 615; *Babcock* v. *Hubbard,* 56 Conn. 285.

As to the jurisdiction of a court of equity, see *Fillmore* v. *Wells,* 10 Col. 228; *Epperson* v. *Nugent,* 57 Miss. 45.

Mr. Charles H. Aldrich, for the appellees:

The court below had no jurisdiction to determine the controversy between appellant and the heirs.    Pomeroy's Eq. Jur. sec. 1283; Bispham Eq. 221; *Wyman* v. *Snyder,* 112 Ill. 99; *Smith* v. *Young,* 62 id. 210; *Humphrey* v. *Browning,* 46 id. 476.

As to the lien of an attorney, see *LaFramboise* v. *Grow,* 56 Ill. 197; *Nichols* v. *Pool,* 89 id. 491; *Henchey* v. *Chicago,* 41 id. 136.

Mr. Justice Baker delivered the opinion of the Court:

Charles J. Hull, a resident of the city of Chicago, died on February 12, 1889.    He died possessed of a large and valuable estate, both real and personal, and consisting in part of lands in the States of Illinois, Maryland, Georgia, Florida, Nebraska and Connecticut.    He left surviving him, as his heirs-at-law, six nephews, two nieces, the daughter of a deceased niece, and the five children of a deceased nephew, and five of such heirs were minors.    The said heirs-at-law are appellees in the present appeal.    By the last will and testament

of said Charles J. Hull all of his property, both real and personal, was devised and bequeathed to Helen Culver, and by it she was designated as his executrix. Said Helen Culver was a cousin of the testator, and for many years before his death had been attending to business for and with him. The will was admitted to probate in the probate court of Cook county on the 20th day of February, 1889.

The will was read on February 19, the day before the day it was probated, and appellees, or such of them as were adults, at once concluded to test its validity, on the ground of undue influence, and with that end in view forthwith engaged the services of A. E. W. Peterson, an attorney at law. At the suggestion of said Peterson, Allan C. Story, the appellant herein, was immediately consulted and his services secured. Appellant was in attendance on the next day in the probate court, when the will was admitted to probate, and cross-examined the witnesses. No appeal was taken from the order probating the same. Thereafter, for about two months, appellant devoted a considerable portion of his time to the matters of said will and the estate of said Charles J. Hull, deceased. He had frequent interviews with some of the heirs, frequent consultations with Mr. Peterson, and several interviews with counsel representing Helen Culver. He prepared, with the assistance of Mr. Peterson, two bills in chancery, (neither of which was ever filed, but a copy of one of them was submitted to opposite counsel,) examined and collated authorities, and performed various other labors in the premises.

In the meantime several offers of compromise were made to Mr. Peterson by attorneys representing Helen Culver. The first offer was of certain property in Baltimore, to be taken by the heirs in full settlement of all claims. This offer was declined. The next offer was made on March 12, and was $200,000. The copy of the bill above mentioned was handed to counsel for Miss Culver on March 16. On or before April 3 the offer of $200,000 was increased to $212,500, and this

last offer was on the day mentioned, or shortly thereafter, accepted by Peterson, who had powers of attorney to act for the heirs, and formal articles of agreement for the settlement of the controversy were signed on April 13. Several of the heirs being minors, it was necessary, in carrying the agreement into execution, to institute proceedings in chancery. Accordingly, on April 29, 1889, a bill was exhibited by the adult heirs and the minor heirs, and the guardians of the latter, wherein Helen Culver was made defendant, and afterwards, she having answered the same, and replication being filed, the cause was submitted to the court, and a decree entered that would render the agreement effective. Both the bill and the answer were prepared by Mr. Dent, one of the solicitors for Helen Culver, the defendant.

Shortly thereafter, on June 27, appellant was given leave to file an intervening petition. Such intervening petition was filed on June 29, and thereafter, on July 3, Helen Culver, having paid into court the sum of $21,250, that being the amount put in controversy by the intervening petition, and having settled with the heirs and guardians of heirs, the residue of the $212,500 named in the decree, was allowed, by stipulation of parties, to withdraw from the suit. Thereafter the issues formed by the intervening petition and answers and replications were submitted to the court, and on December 6, 1890, the court rendered a decree finding that it had no jurisdiction of the subject matter of the intervening petition, and dismissed it out of court.

The intervening petition is based on a claim made by appellant that he entered into an agreement with the heirs whereby they agreed that he might have "an heir's share," or "one-tenth," of whatever might be recovered, by suit or otherwise, as the price of his legal services ; that $212,500 was received by way of compromise; that he is entitled to $21,250 thereof, and that the agreement operates as an equitable assignment of said last mentioned sum. Appellees deny the alleged agree-

ment, and insist that the only agreement made was, that they should pay appellant, from time to time, on account, such sums of money as should be reasonable, and at the termination of the litigation should make him such further payment as should fairly compensate him for all services actually rendered, and that if they were unable to agree as to what was fair and reasonable, then it was to be left to the decision of Peterson.

Upon the issue whether the agreement was for an "heir's share" or for a reasonable compensation, there is an irreconcilable conflict in the evidence. In our opinion the weight of the evidence is against the contention of appellant, and we have examined it quite closely, both in the abstract and as found in the record itself. The chancellor who heard the cause, in deciding it, said: "I find, from the evidence, that the contention of Mr. Story that he was to have an heir's share is not sustained." And the Appellate Court, in their opinion affirming the decree of the circuit court, said: "A review of the testimony would only serve to show that there was no preponderance in favor of the appellant." There seems, under the circumstances, to be no occasion for a discussion of the evidence in detail. It necessarily follows that there was no equitable assignment of any specific proportion or aliquot part of such money or property as might be recovered.

The evidence seems to show that it was the understanding of the parties that the reasonable compensation to appellant, except such reasonable advances as might be made pending litigation, should be paid out of the proceeds of the proposed litigation. It is urged by appellant that it is not essential that a specific sum or fixed proportion of the proceeds should be agreed upon in order to constitute a valid equitable assignment, but that it is sufficient for that purpose if by the agreement the reasonable compensation did not depend upon the mere personal responsibility of the heirs, but was to come out of the proceeds. An equitable assignment is such an assign-

ment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect. (Abbott's Law Dic.; 6 Am. and Eng. Ency. of Law, 656.) It is not perceived how there can be an appropriation of a part of a fund, and a transfer of title thereto, when there is no ascertainment of the part or proportion in respect to which the agreement is to operate as an appropriation and transfer, in equity, of title. It would seem that such a supposed assignment would necessarily be void for uncertainty, for there must be an actual appropriation of the fund, or of some designated part, proportion or per cent of it. Appellant wholly ignores the distinction, which is clearly pointed out in *Wyman* v. *Snyder*, 112 Ill. 99, and also in *Trist* v. *Child*, 21 Wall. 441, between an actual assignment of a part of a debt or claim or fund, and a mere promise or agreement to pay a part of such debt or claim when collected or recovered, or pay out of such fund. Here the agreement that the compensation of appellant should come out of the proceeds of the proposed litigation was simply a promise by the heirs that they would pay such compensation out of such proceeds, and depended for its performance upon the mere personal responsibility of such heirs.

Some of the authorities which appellant cites in connection with the particular claim now under consideration, we do not consider here applicable. They might be in point if the $212,-500 was a fund which was in charge of the chancery court, and which said court was administering upon. But such was not here the case. Here the minor heirs were unable to bind themselves by the compromise that had been made, and in the principal suit the chancery court merely approved of the compromise, and made provision for carrying the same into effect by the payment of the $212,500 to the heirs and the guardians of such of them as were minors, and the execution of necessary and proper receipts, releases and discharges. The $21,250 was brought into court merely by agreement of parties, and with the express stipulation, made in open court and entered

of record, "that all legal and equitable rights as between the complainants and the said Story, including the right to question the jurisdiction of this court, are reserved for future determination, with a reservation to the complainants, severally and respectively, and to said Story, of all legal and equitable rights to the same, in all respects as if a deposit in court of moneys had not been provided for as aforesaid."

The case, then, stands upon this footing: appellees promised to pay appellant a reasonable compensation for his services, and promised to pay it out of the proceeds of the contemplated litigation. The question what is a reasonable compensation is purely a question of fact, upon which appellees have a constitutional right to take the verdict of a jury; and the only remedy is an action at law, for a breach of the promise to pay. *Wright* v. *Ellison*, 1 Wall. 16; *Trist* v. *Child*, *supra.*

It is, perhaps, hardly necessary to add, that in this State, and in the absence of an express contract out of which an equitable assignment arises, an attorney at law has no lien for his compensation upon the judgment or decree rendered in a suit prosecuted by him, or upon the real estate, moneys, fund or other property recovered by means of his exertions and labors. *Humphrey* v. *Browning*, 46 Ill. 476; *Forsythe* v. *Beveridge*, 52 id. 268; *LaFramboise* v. *Grow*, 56 id. 197; *Nichols* v. *Pool*, 89 id. 491.

We find no error in the judgment of the Appellate Court affirming the decree of the circuit court. Said decree properly dismissed the intervening petition of appellant out of court, on the ground that the court of equity had no jurisdiction of the subject matter of such petition.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*