### Ossian Cameron *et al.*

*v.*

### Louise Boeger *et al.*

*Opinion filed December 16, 1902.*

1. Attorneys at law—*client may dismiss suit without consent of attorney.* A client has a right to dismiss a suit without the knowledge or consent of his attorney, in the absence of any assignment to the attorney of an interest in the suit; and such dismissal can not be set aside, in the absence of proof that the client's consent to it was fraudulently obtained.

2. Same—*when contract for compensation does not operate as an assignment of interest.* An agreement that the compensation of attorneys shall come out of proceeds of the litigation or settlement thereof does not operate as an equitable assignment of an interest in the subject matter of the suit.

3. Same—*attorney has no lien on judgment for fees in absence of express contract.* In the absence of an express contract out of which an equitable assignment arises, an attorney has no lien for his compensation upon the judgment or decree rendered in a suit prosecuted by him or upon the money or property recovered.

*Cameron* v. *Boeger,* 102 Ill. App. 649, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. Chetlain, Judge, presiding.

The following is a statement of the material facts in this case as made by the Appellate Court:

"The Oakland Cemetery Association filed its bill in the superior court against Louise Boeger *et al.* for an accounting as to the proceeds of the sale of certain lands

therein described, and the specific performance of an alleged contract of sale by said Louise Boeger to one William Rauguth of a certain two hundred and forty acres of land, which contract, it was charged, had been assigned to said cemetery association. The defendants answered the bill, specifically denying the equities claimed, and the cause was referred to a master to take testimony and report. After much testimony had been taken the complainant and Louise Boeger agreed upon a settlement, in pursuance of which Louise Boeger paid the association $2500 in cash, receiving in return therefor a conveyance of one acre of land and an agreement that the said suit should be dismissed, which was done the 2d of March, 1901. The dismissal was entered upon the filing of the following stipulation:

"'I hereby enter my appearance as additional counsel for the complainant on this second day of March, 1901.

N. H. HANCHETTE, *of Counsel.*'

"'It is hereby stipulated by and between the parties to the above entitled cause that said suit may be dismissed without costs to either party.

February 20, 1901.    THE OAKLAND CEMETERY ASS.,
[CORP. SEAL.]    By WILLIAM RAUGUTH, *Prest.*

Attest: MINNIE DIETZEL, *Secy.*

N. H. HANCHETTE, *of Counsel for Compl't.*
THATCHER & GRIFFEN, *Sols. for Defendants.*'

"Thereafter, upon the same day, under leave of court, the following written paper was filed in court:

"'And now comes the complainant and moves the court to set aside and vacate the order of dismissal this day entered in above case.

CHESTER FIREBAUGH,
OSSIAN CAMERON,
JAMES J. KELLY,
*Solicitors for Complainants.*'

"Upon the same day it was ordered that the motion to vacate the order of dismissal of said cause be continued. April 8, 1901, an intervening petition was filed in said cause by Ossian Cameron, James J. Kelly and Chester

Firebaugh, appellants, none of whom were parties to the said cause, setting forth the making, at the date thereof, of the following agreement:

" 'CHICAGO, August 2, 1900.

" 'This article of agreement, made and entered into on this second day of August, A. D. 1900, by and between the Oakland Cemetery Association, a corporation, and William Rauguth, parties of the first part, and Ossian Cameron and Chester Firebaugh, parties of the second part, witnesseth as follows, to-wit:

" 'Whereas, the said parties of the first part have a certain dispute or litigation with one William Boeger, Louise Boeger, his wife, Louis Boeger, his son, and one Fulton H. Sears, in regard to the rights of the first party hereto in and to all of the following described real estate, to-wit: The west half (W. ½) of the north-east quarter (N. E. ¼) and the north-west quarter (N. W. ¼) of section twenty (20), all in township thirty-nine (39), north of range twelve (12), east of the third principal meridian, situate in the county of Cook and State of Illinois; and whereas, it is necessary for the first party hereto, in order to obtain what the first party hereto claims to be his rights in and to all of said described real estate, to litigate the same with the said Boegers and the said Sears; and whereas, it is necessary for the first parties hereto to have attorneys and counsel to aid in and about prosecuting said litigation to obtain the rights and interests of the first parties hereto in and to said premises:

" 'Now, therefore, it is hereby stipulated and agreed that the said parties of the first part hereto do hereby employ, engage and retain the said Ossian Cameron and the said Chester Firebaugh as the attorneys of the first parties hereto, to prosecute the said litigation; and it is hereby agreed that the said first parties hereto will, from time to time, advance and pay whatever costs or expenses may be necessary in and about the prosecution of the said litigation; and it is further hereby agreed that the said second parties hereto shall receive as their compensation for their services in and about the prosecution of said litigation on behalf of the first parties hereto, from the first parties hereto, one-third of whatever is realized or obtained as the result of any such litigation, or if any settlement is made pending any such litigation, then the second parties hereto shall receive one-third of whatever amount is obtained or received as a settlement of said matters in litigation. The fees of the second party herein are contingent upon the result of said litigation, as above expressed, they to receive one-third,

as aforesaid, of the avails of said litigation, or of any settlement which is made in the case. All expenses and costs of said litigation, as aforesaid, to be advanced and paid by the first parties thereto.

" 'It is understood that in case any settlement had in this case results in the first parties hereto, or either of them, obtaining the said lands and premises above set out, then the second parties hereto shall receive, from time to time, one-third of the benefits, avails and net earnings of said business.

" 'Witness our hands and seals this second day of August, A. D. 1900.

OAKLAND CEMETERY ASSOCIATION,
By WILLIAM RAUGUTH, *Pres.*    [SEAL.]
MINNIE DIETZEL, *Secy.*

[SEAL.]         WILLIAM RAUGUTH,        [SEAL.]
                OSSIAN CAMERON,          [SEAL.]
                CHESTER FIREBAUGH.       [SEAL.]

" 'James J. Kelly is hereby employed as associate counsel in above case on same terms as above expressed, and is to receive in addition to, or besides what Firebaugh and Cameron are to receive, one-sixth of the proceeds of above obligation, less a sum equal to the costs and expenses of said case.

September 21, 1900.    OAKLAND CEMETERY ASSOCIATION,
                       By WILLIAM RAUGUTH, *Pres.*'

"By the petition and affidavits in support thereof it was set forth that the petitioners had rendered services to the complainants, as solicitors for them in said suit, to the value of $20,000.00; that the Oakland Cemetery Association and William Rauguth are now, and were each at all times mentioned in the petition, totally insolvent and have no effects or property out of which any debt of any kind could be collected; that the defendants to said bill have at all times known that the petitioners had a written agreement with the complainants, by which they, the petitioners, were to receive one-half the proceeds of said litigation; that by collusion between the complainants and defendants N. H. Hanchette was employed to appear as counsel for said complainants and consent to the dismissal of said bill without notice to or knowledge by petitioners. That said dismissal was so made for the purpose of defrauding petitioners out of

that compensation to which, under said agreement, they were lawfully and equitably entitled.

"The defendants demurred to said petition, which demurrer was sustained and the suit dismissed, the court making the following finding: 'The court being fully advised in the premises, finds that the complainant herein, for the purpose of defrauding said Chester Firebaugh, Ossian Cameron and James J. Kelly out of their fees as solicitors, made said stipulation to dismiss this suit without notice to said Firebaugh, Cameron and Kelly, and, combining and confederating with the defendants for the purpose aforesaid, caused this suit to be dismissed for the purpose aforesaid. But the court finds that the contract for solicitors' fees between the complainants and the said Firebaugh, Cameron and Kelly gave no interest in the subject matter of the suit, and that the complainant had the right to dismiss its suit.'"

OSSIAN CAMERON, CHESTER FIREBAUGH, and JAMES J. KELLY, *pro se.*

THATCHER & GRIFFEN, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—Appellants were solicitors of the Oakland Cemetery Association, the complainant in the chancery suit referred to in the statement preceding this opinion, and filed the bill therein as such solicitors for the association. After the chancery suit had been put at issue by the filing of an answer to the bill and replication to the answer, the cause was referred to a master in chancery before whom testimony was taken; and the cause was pending before the master when the same was dismissed.

Appellants claim, as we understand their contention, that the complainant in the chancery suit had no right to dismiss the same, upon the alleged grounds that such dismissal was without notice to them, as solicitors, and

was brought about by collusion with the defendants in the chancery suit for the purpose of depriving them of their fees, as such solicitors.

While the dismissal of a suit in the way, in which the dismissal here under consideration was accomplished, may not be a commendable practice, still the complainant in the suit had a right to dismiss the same without the consent or knowledge of its solicitors; and we can not set aside the action of the lower court because of such dismissal, there being no proof that there was any fraud practiced in procuring the consent of the complainant in the chancery suit to the dismissal.

In *Henchey* v. *City of Chicago*, 41 Ill. 136, we said (p. 139): "Although the better practice undoubtedly is, not to dismiss a suit in the absence of plaintiff's counsel, upon motion of defendant's counsel based upon a stipulation to that effect, signed by the plaintiff in person, yet we cannot set aside the action of the court merely for that reason, and in the absence of proof that the stipulation was fraudulently or improperly obtained. * * * It is better that clients should be at liberty to adjust their difficulties if they can." In the case at bar, a meeting of the board of directors of the Oakland Cemetery Association, complainant in the suit, was held on February 20, 1901, and a resolution was then adopted by the board, reciting that it was for the best interest of all parties that the litigation should be abandoned, and ordering a dismissal of the suit. On the same day a written stipulation was entered into between the association and the solicitors for the defendants in the chancery suit, agreeing that the suit might be dismissed without cost to either party. This stipulation was signed by the association by its president, and attested under the corporate seal by the secretary, and was also signed by a new counsel, appointed by the association for the purpose of entering the order of dismissal. The stipulation in question was not obtained from the complainant in the chan-

cery suit in any improper way, or by any fraudulent means, but appears to have been executed freely and voluntarily. "A client may, without the knowledge and against the consent of his attorney, compromise or otherwise settle his case with the opposite party before judgment or decree." (3 Am. & Eng. Ency. of Law,—2d ed.— p. 465).

The court below, upon application of the present appellants, first set aside the order dismissing the cause, and permitted appellants to file an intervening petition, setting up their contract with the Oakland Cemetery Association, as the same appears in the statement preceding this opinion. The record recites that the intervening petition was demurred to, and that such demurrer was sustained by the court. The court thereupon found that the contract for solicitors' fees between the Oakland Cemetery Association and the appellants gave no interest to appellants in the subject matter of the suit, and that the complainant therein had the right to dismiss its suit; and thereupon the suit was dismissed by the court.

Appellants seem to rely upon the case of *Weinberg* v. *Noonan*, 193 Ill. 165, as showing that the intervening petition herein was improperly disposed of by the court. The case referred to is so different in its facts from the case at bar, that it cannot be regarded as having any application here. There, the intervening petition was filed by consent, and was stricken from the files without being "judicially heard and determined." Here, however, the court granted to appellants a hearing upon the demurrer to their intervening petition, and judicially determined the insufficiency of the matter alleged in the petition. Moreover, as the court properly dismissed the original suit, in which the intervening petition was filed, the dismissal of the intervening petition necessarily followed, because it was merely a part of such suit.

*Second*—The question then arises whether the court below decided correctly that the contract of the appel-

lants for fees, set up in their intervening petition, gave to appellants no interest in the subject matter of the suit. If they had an interest in the subject matter of the suit by reason of the contract, then they were proper parties to the suit, and should have been allowed to become parties thereto.

Upon an examination of the contract, set up in the intervening petition, it will be seen that, by the terms of that contract, there was no assignment, equitable or otherwise, to the appellants of any interest in the subject matter of the suit. The agreement provides that appellants shall receive, as "compensation for their services in and about the prosecution of said litigation on behalf of the first parties hereto from the first parties hereto one-third of whatever is realized or obtained, as the result of any such litigation, or if any settlement is made pending any such litigation, then the second parties hereto shall receive one-third of whatever amount is obtained or received as a settlement of said matters in litigation," etc. The contract was a personal agreement on the part of the Oakland Cemetery Association and its president, being "the first parties hereto," to pay to appellants fees, the amount of which was to be determined by what was recovered. Under the authorities there is a clear distinction "between an actual assignment of a part of a debt or claim or fund, and a mere promise or agreement to pay a part of such debt or claim when collected or recovered, or pay out of such fund." (*Story* v. *Hull*, 143 Ill. 506). Here, the agreement, that the compensation of appellants should come out of the amount realized as the result of the litigation, was simply a promise by the association and its president that they would pay such compensation out of the proceeds of the litigation, and depended for its performance upon the mere personal responsibility of the promisors. Where there is an agreement by a party to pay his attorney a reasonable compensation for his legal services out of the

proceeds of the litigation, such agreement, depending as it does upon the mere responsibility of the employer, does not operate as an equitable assignment of any portion of the fund sought to be recovered in the suit. (*Story* v. *Hull*, 143 Ill. 506; *Wyman* v. *Snyder*, 112 id. 99; *Trist* v. *Child*, 21 Wall. 441; *Christmas* v. *Russell*, 14 id. 84; Pomeroy's Eq. Jur. secs. 1280-1283; *Bromwell* v. *Turner*, 37 Ill. App. 561).

Nor can it be said that appellants had any lien for their fees. "In this State, and in the absence of an express contract, out of which an equitable assignment arises, an attorney at law has no lien for his compensation upon the judgment or decree rendered in a suit prosecuted by him, or upon the real estate, moneys, fund or other property recovered by means of his exertions and labors." (*Story* v. *Hull, supra; Wyman* v. *Snyder, supra; Humphrey* v. *Browning*, 46 Ill. 476; *Forsythe* v. *Beveridge*, 52 id. 268; *LaFramboise* v. *Grow*, 56 id. 197; *Nichols* v. *Pool*, 89 id. 491; *North Chicago Street Railroad Co.* v. *Ackley*, 171 id. 100). In the *Ackley case, supra,* we said (p. 113): "The plaintiff has a right to compromise, and avoid the anxiety resulting from a cause pending to which he is a party. Any contract, whereby a client is prevented from settling or discontinuing his suit, is void, as such agreement would foster and encourage litigation." (*Williams* v. *Ingersoll*, 89 N. Y. 518). Inasmuch as the agreement set up by the appellants in their intervening petition did not amount to an assignment to them of any portion of the subject matter of the suit, or of what might be obtained as the result of the suit, and conferred upon them no lien for their fees, they did not show that they were entitled to be made parties to the chancery suit.

Accordingly, the judgment of the Appellate Court is affirmed.　　　　　　　　　　　　　*Judgment affirmed.*