# Illinois Official Reports

## Appellate Court

*Mordkovich v. Tishman Speyer Properties*, 2017 IL App (1st) 161609

| | |
|---|---|
| Appellate Court Caption | CARMELLA MORDKOVICH, Plaintiff-Appellee, v. TISHMAN SPEYER PROPERTIES, OTIS ELEVATOR COMPANY, and 161 NORTH CLARK, LLC, Defendants (Douglas B. Warlick & Associates, Intervenor-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-1609 |
| Filed | April 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-0657; the Hon. Eileen M. Brewer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas B. Warlick and Stephen D. Brown, of Douglas B. Warlick & Associates, of Geneva, for intervenor-appellant.<br><br>Ross W. Bartolotta and Amy R. Miller, of Swanson, Martin & Bell LLP, of Lisle, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1     Douglas B. Warlick & Associates (Warlick) appeals from an order of the circuit court dismissing its motion to intervene and for an adjudication of its alleged lien on the sums paid in settlement of this personal injury action. Based upon the following analysis, we affirm the judgment of the circuit court.

¶ 2     The following facts are taken from the allegations contained in Warlick's motion to intervene and for an adjudication of its alleged lien and the documents submitted in support thereof.

¶ 3     Beginning in November 2010, Warlick represented Carmella Mordkovich in an unrelated family law matter pending in Kane County, Illinois (hereinafter referred to as the family law case). On June 10, 2011, Mordkovich filed the instant negligence action in the circuit court of Cook County against Tishman Speyer Properties and others arising from injuries she sustained in May 2010 (hereinafter referred to as the personal injury action). Warlick did not represent Mordkovich in the personal injury action; rather, she was represented by Kent Lucaccioni.

¶ 4     On March 27, 2013, Mordkovich executed a series of documents, including an $80,000 promissory note payable to Warlick for legal services rendered in the family law case, which states that it is payable immediately upon Mordkovich's right to receive a recovery in this personal injury action. On that same date, Mordkovich also executed a document titled "Assignment of Lien," which provides that any outstanding sums due to Warlick as a result of its representation of her in the family law case "will automatically be considered a lien on any assets and/or proceeds that [she] may receive from [her] personal injury litigation" and directing Lucaccioni to withhold $80,000 from any proceeds of the personal injury action to pay approximately $60,000 that was outstanding at that time and to satisfy Warlick's final bill, and an "Irrevocable Letter of Direction" addressed to Lucaccioni, directing him to pay Warlick from the proceeds of any recovery in this personal injury action such sums which may be due on the promissory note (all of these documents are hereinafter referred to as the encumbrance documents). Copies of the encumbrance documents were forwarded to Lucaccioni under cover of March 27, 2013, along with a notice of lien addressed to Lucaccioni in which Warlick claimed a lien upon the proceeds of this personal injury action for fees due in the family law case.

¶ 5     The encumbrance documents were amended twice, culminating in the "First Amended" encumbrance documents dated March 28, 2014, increasing the principal sum on the promissory note to $160,000 and amending the remaining documents accordingly. On April 23, 2014, Lucaccioni executed a document titled "Acknowledgement of Lien," attesting to his receipt of the first amended encumbrance documents and stating: "I will honor and protect those lien interests."

¶ 6     On May 22, 2015, Douglas B. Warlick sent a certified letter to Lucaccioni setting forth his understanding that this personal injury action had been settled and enclosing an updated bill for Warlick's services in the family law case in the amount of $242,215. The letter directed Lucaccioni to tender funds in that amount out of the proceeds of the settlement directly to Warlick pursuant to the "First Amended Assignment of Lien" document executed by Mordkovich on March 28, 2014.

¶ 7    On May 28, 2015, the instant personal injury action was dismissed pursuant to a $975,000 settlement. The trial court's order dismissing the action states that the court retained jurisdiction "to adjudicate any liens."

¶ 8    Having not received any portion of the proceeds of the settlement, on June 29, 2015, Warlick filed a "Motion to Vacate the Dismissal and For Leave to Intervene for Adjudication of Lien." Attached to the motion are copies of the "First Amended Assignment of Lien," the "First Amended Promissory Note," the "Irrevocable Letter of Direction," the "First Amended Notice of Lien," and correspondence from Lucaccioni addressed to Warlick dated December 13, 2013, stating "[w]e will continue to protect your lien interests."

¶ 9    On September 9, 2015, Mordkovich, by substitute counsel, filed a "Countermotion to Adjudicate Lien," arguing that Warlick possessed no actionable lien on the proceeds of the settlement in this action and, in the alternative, that Warlick's claimed fees were excessive. On September 16, 2015, the trial court entered an order granting Warlick leave to intervene and providing that Mordkovich's countermotion would stand as her response to Warlick's motion for an adjudication of its lien rights.

¶ 10   In response to a motion filed by Warlick, the trial court entered an order on November 4, 2015, requiring, *inter alia*, that Mordkovich maintain the status quo and not alienate or dissipate any funds that she had received from the settlement of the instant personal injury action. In addition, that order directed Lucaccioni not to alienate or dissipate any of the settlement funds being held by him.

¶ 11   On November 18, 2015, the matter came before the trial court on Warlick's motion to compel Mordkovich and Lucaccioni to place the proceeds of the settlement into escrow. Counsel representing Lucaccioni represented that the net proceeds of the settlement had been distributed to Mordkovich. Following that hearing, the trial court entered an order requiring Mordkovich to tender $160,000 to her new attorneys to be deposited in their escrow account or deposited with the clerk of the circuit court.

¶ 12   When the matter next came before the trial court on December 2, 2015, Mordkovich's attorney represented that Mordkovich had only $80,000 remaining from her net settlement proceeds of $495,000. The trial court ordered Mordkovich to deposit the $80,000 with her attorneys and provide an accounting of the expenditures which she made from the net proceeds of the settlement. The accounting was due by December 16, 2015, but no accounting was ever filed.

¶ 13   On January 5, 2016, after considering the briefs of the parties and entertaining arguments from their attorneys, the trial court orally found that Warlick did not possess an equitable lien upon the proceeds of the settlement in this personal injury action as the language in the "First Amended Promissory Note" is merely a promise to pay. The trial court did not enter a written order memorializing those findings. It did, however, enter an order granting Mordkovich's "supplemental response in opposition to escrow of funds with the clerk of the court" and vacating its orders of November 4, November 18, and December 2, 2015, which required Mordkovich to the escrow funds and account for the expenditure of the settlement proceeds. The trial court continued the matter to January 13, 2016, for "status on dismissal of Warlick's adjudication of lien motion." On January 13, 2016, Warlick filed a motion for reconsideration of the January 5 order, requesting that the trial court set a date certain for an evidentiary hearing on its motion to adjudicate its asserted lien.

¶ 14    On January 29, 2016, Mordkovich filed a pleading titled "Motion to Dismiss Intervenor's Motion to Adjudicate Lien and to Terminate Warlick's Status as an Intervenor." The motion references section 2-619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1) (West 2014)) and is predicated on the argument that, since the trial court found that Warlick did not possess an equitable lien on the proceeds of her personal injury settlement, the trial court did "not possess any jurisdiction to adjudicate Warlick's claimed lien."

¶ 15    On March 25, 2016, the trial court entered an order setting Warlick's January 13, 2016, motion for reconsideration for hearing on May 10, 2016. In addition, the order provided that Mordkovich's motion to dismiss and Warlick's motion to set an evidentiary hearing date were "entered and continued for status only to the next hearing date."

¶ 16    When the matter came on for hearing on May 10, 2016, the trial court entered an order denying Warlick's January 13, 2016, motion for reconsideration, denying Warlick's motion for an evidentiary hearing on its motion to adjudicate its lien, and dismissing Warlick's "action" and its motion to vacate the dismissal of the underlying personal injury action and to adjudicate its lien. The order provides that it was entered "*sua sponte* for lack of subject matter jurisdiction and [section 2-619(a)(1) of the Code]." This appeal followed.

¶ 17    As this matter comes to us on appeal from a dismissal for lack of jurisdiction pursuant to section 2-619(a)(1) of the Code, our review is *de novo*. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 94 (2001).

¶ 18    Warlick argues that the trial court erred in dismissing its lien claim for want of jurisdiction based upon a finding that it did not possess an equitable lien on the proceeds of Mordkovich's settlement of the instant personal injury action. Warlick asserts that, contrary to the trial court's finding, the first amended encumbrance documents constitute more than a mere promise to pay the sums due it from the settlement proceeds. We disagree.

¶ 19    An equitable lien may arise in circumstances where a party expresses in writing an intention to make real or personal property, or some fund, the security for a debt. *Oppenheimer v. Szulerecki*, 297 Ill. 81, 87 (1921); *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 178 (1998). To give rise to an equitable lien upon a fund, however, the written agreement must constitute an assignment of the fund or some designated part, proportion, or percentage thereof. *Lewis v. Braun*, 356 Ill. 467, 477-78 (1934); *Lewsader*, 296 Ill. App. 3d at 178. A mere promise to pay cannot support an equitable lien. *Wegner v. Arnold*, 305 Ill. App. 3d 689, 696 (1999). There is a clear distinction between an actual assignment of a part of a claim or fund and a mere promise or agreement to pay a part of a debt or claim out of a fund. *Cameron v. Boeger*, 200 Ill. 84, 91 (1902). An agreement providing that payment of a debt is to be made out of the proceeds of litigation does not operate as an equitable assignment of any portion of the proceeds and does not give rise to an equitable lien. *Id.* at 91-92.

¶ 20    We start our examination of the encumbrance documents with the "First Amended Promissory Note." The terms of that note provide that it was "intended to pay" all of the fees and costs owed by Mordkovich to Warlick for its representation of her in the family law action. The note states that full payment is due immediately upon Mordkovich's right to receive "any recovery whatsoever" from her personal injury action. However, if the note had not been fully satisfied by December 31, 2014, Mordkovich obligated herself to commence making monthly payments of $1000 commencing on January 1, 2015. Included within the note is a paragraph which provides, in relevant part, as follows:

"This Note is a secured instrument. In addition to the protections given to the Note Holder [(Warlick)] under this Note, the underlying Assignment of Lien, dated the same date as this Note, protects the Note Holder [(Warlick)] from possible losses which might result if I [(Mordkovich)] do not keep the promises which I [(Mordkovich)] make in this Note. The Security Instrument describes how and under what conditions I [(Mordkovich)] may be required to make immediate payment in full of all amounts I [(Mordkovich)] owe under this Note."

By its very terms, the note is Mordkovich's personal promise to pay, stating "I *** hereby promise to pay." There is no language in the "First Amended Promissory Note" assigning any interest in Mordkovich's underlying personal injury action or any portion of the recovery thereunder to Warlick.

¶ 21    We turn next to the provisions of the "First Amended Assignment of Lien," which Mordkovich also executed on March 28, 2014, and which is referred to in the above-quoted portion of the "First Amended Promissory Note." That document states that Mordkovich agreed that, by signing the document, "any outstanding balance due to DOUGLAS B. WARLICK & ASSOC., as a result of [her] litigation *** [in the family law case] will automatically be considered a lien on my assets and/or proceeds that [she] may receive from [her personal injury action] *** in Cook County, Illinois." The "First Amended Assignment of Lien" also directs Lucaccioni to withhold $160,000 from any settlement proceeds in the personal injury action "in order to pay approximately $140,000 that is outstanding at this time and to satisfy the final bill from DOUGLAS B. WARLICK & ASSOC." The document states that "Although I [Mordkovich] have hereunto granted an assignment and placed a lien in the amount of $160,000 against my interest in the aforesaid personal injury litigation, I fully understand that said lien or assignment shall be automatically adjusted as follows ***." Also contained within the "First Amended Assignment of Lien" is the following provision:

"Assignor [Mordkovich] authorizes and directs KENT M. LUCACCIONI, LTD., or any successor attorneys, to withhold from the proceeds at any time due to Assignor, sufficient funds to pay the Promissory Note and further authorize and direct such attorney to pay such funds directly to DOUGLAS B. WARLICK & ASSOC., in Geneva, Illinois. *** In the event of a partial or structured settlement, no funds shall be distributed to the Assignor, or her heirs, successors, or assigns, until such time as the Note has been paid in full."

Although the document contains the words assignor and assignment, nowhere is there an express statement that Mordkovich assigned a specified portion of the proceeds from this personal injury action to Warlick nor is there any provision stating that Warlick was to look to the settlement proceeds for payment of the "First Amended Promissory Note" and any additional fees billed in relation to the family law case rather than to Mordkovich personally for payment. See *Cameron*, 200 Ill. at 91-92; *Department of Public Works of Illinois v. Exchange National Bank*, 93 Ill. App. 3d 390, 394 (1981).

¶ 22    We agree with the trial court's finding that the first amended encumbrance documents merely contain Mordkovich's promise to pay the sums due Warlick on the "First Amended Promissory Note" along with unspecified additional attorney fees from the proceeds of her settlement in this personal injury action and do not contain an assignment of some specified portion of those proceeds. We conclude, therefore, that the trial court correctly determined

the terms of the first amended encumbrance documents did not form the basis of an equitable lien in favor of Warlick on the proceeds of Mordkovich's settlement.

¶ 23    Warlick next argues that the principles of fairness and justice required the trial court to recognize an equitable lien in its favor on the proceeds of Mordkovich's settlement. However, Warlick failed to cite any authority in support of the proposition other than the general principle that, when there is no other remedy available, a trial court may employ its equitable power to grant relief when the circumstances require. *Lewsader*, 296 Ill. App. 3d at 175. The argument has, therefore, been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Chicagoland Chamber of Commerce v. Pappas*, 378 Ill. App. 3d 334, 365 (2007). Forfeiture aside, the argument lacks merit under the circumstances of this case. Warlick's own brief contends that it has claims against Mordkovich and Lucaccioni for fraud, breach of fiduciary duty, promissory estoppel, conversion, and unjust enrichment, and during oral argument, it was admitted that Warlick is presently pursuing independent actions. Simply stated, Warlick is not without legal remedies to pursue his claims against either Mordkovich or Lucaccioni, and there was, therefore, no reason for the trial court to invoke its power and fashion an equitable remedy.

¶ 24    Having determined that the trial court correctly found that Warlick did not possess an equitable lien on the proceeds of Mordkovich's settlement, we turn next to the effect that such a finding had upon the subject-matter jurisdiction of the trial court. Intervention for the purposes of lien adjudication in a tort action is not an independent proceeding. It is an ancillary and supplemental proceeding, which is subordinate to the underlying action. See *Ackmann v. Clayton*, 39 Ill. App. 3d 1013, 1015 (1976). The trial court's jurisdiction to adjudicate an asserted lien is derived from its jurisdiction over the underlying proceeding or the recovery therefrom. Having jurisdiction over the underlying action or the proceeds of any recovery provides the requisite subject-matter jurisdiction to adjudicate any claimed lien upon those proceeds. *Philip Morris*, 198 Ill. 2d at 95-96; see also *DeKing v. Urban Investment & Development Co.*, 155 Ill. App. 3d 594, 600 (1987). However, in the absence of a lien on the proceeds, the trial court had no further jurisdiction in the intervention proceeding to determine any other right of action that the intervenor may have against the parties to the underlying action. *DeKing*, 155 Ill. App. 3d at 600.

¶ 25    When, as in this case, a trial court determines that an intervenor who is solely asserting a lien in a tort action has no enforceable lien rights in the proceeds of that action, the court's jurisdiction over any claim that the intervenor may have against the parties to the underlying action is exhausted, and the appropriate course is to deny the petition for lien adjudication and dismiss the intervention petition for want of jurisdiction, which is exactly what the trial court did in this case. Obviously, such a dismissal is without prejudice to any independent claim that the intervenor might bring in a separate action against any of the parties to the underlying action.

¶ 26    Based upon the foregoing analysis, we affirm the judgment of the trial court.

¶ 27    Affirmed.